**SO ORDERED: March 27, 2025.**



_____
James M. Carr
United States Bankruptcy Judge

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| JOSEPH DEWAYNE SATTERFIELD, | ) | Case No. 22-04154-JMC-13 |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| ANN M. DELANEY, CHAPTER 13 TRUSTEE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adversary Proceeding No. 24-50058 |
| | ) | |
| S&C FINANCIAL GROUP LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**ENTRY GRANTING MOTION FOR SUMMARY JUDGMENT**

THIS MATTER comes before the Court on the *Motion for Summary Judgment* filed by Ann M. DeLaney, chapter 13 trustee ("Trustee"), on November 5, 2024 (Docket No. 21) (the "Motion"). The Court reviewed the Motion, the *Response to Trustee's Motion for Summary Judgment and Memorandum in Support Thereof* filed by S&C Financial Group LLC ("S&C") on January 2, 2025 (Docket No. 24) (the "Response"), the *Affidavit of Scott Wynkoop* attached to the Response, the *Reply Brief on Motion for Summary Judgment* filed by Trustee on January 16,

2025 (Docket No. 25), the *Complaint to Avoid Transfer of Real Estate* filed by Trustee on May 5, 2024 (Docket No. 1) (the "Complaint"), and the designated evidence.  The Court heard the representations of S&C's counsel and Trustee's counsel at a hearing on March 13, 2025 (the "Hearing").  At the Hearing, counsel for S&C clarified S&C's position regarding a critical issue, which will be discussed hereinafter.[1]  Therefore, being duly advised, the Court now **GRANTS** the Motion.

*Summary Judgment Standard*

Trustee moves the Court to enter summary judgment in her favor and against S&C pursuant to Fed. R. Civ. P. 56, made applicable to this adversary proceeding by Fed. R. Bankr. P. 7056.  To obtain summary judgment, Trustee must show that there is no genuine dispute as to any material fact and that Trustee is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The burden rests on Trustee, as the moving party, to demonstrate that there is an absence of evidence to support the case of S&C, the nonmoving party.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986).  After Trustee demonstrates the absence of a genuine issue for trial, the responsibility shifts to S&C to "go beyond the pleadings" to cite evidence of a genuine issue of material fact that would preclude summary judgment.  *Id*. at 324, 106 S.Ct. at 2553.  If S&C does not come forward with evidence that would reasonably permit the Court to find in S&C's favor on a material issue of fact (and if the law is with Trustee), then the Court must enter summary judgment against S&C.  *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87, 106 S.Ct. 1348, 1355-56, 89 L.Ed.2d 538 (1986); *Celotex*, 477 U.S. at 322-24, 106 S.Ct. at 2552-53; and *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-52, 106 S.Ct. 2505, 2511-12, 91 L.Ed.2d 202 (1986)).

---

[1] See pp. 7-8.

*Background Information*

At the center of this adversary proceeding is real property located at 624 Congress Avenue, Indianapolis, Marion County, Indiana (the "Property").[2] On October 9, 2015, a "tax sale" of the Property was conducted, and S&C was the purchaser at that sale.[3]

Resolution of this adversary proceeding requires consideration of the intersection of Indiana's tax sale statute (Ind. Code § 6-1.1-24 *et seq.*) and bankruptcy. The tax sale process in Indiana can be summarized as follows:[4]

> [T]he rules of the Indiana Tax Sale are set forth by statute. What follows is a brief summary of … the tax sale process … .
>
> Upon the failure of payment of property taxes, the [Marion] county treasurer certifies to the county auditor a list of real property in which property taxes, special assessments, or other unpaid costs owed to the county with respect to the property are delinquent. This property is eligible for sale and remains eligible unless all delinquent obligations are paid in full, or unless an accommodation is sought and accepted before the sale. In addition to this delinquency list, the [Marion] county auditor prepares a notice of the property eligible for sale and petitions the court (in layman's terms this would be a "law suit") for an order allowing the sale of the property at tax sale. The county auditor must notify the property owner(s) of record of the delinquency, the petition and the pending sale. ("Pre-sale notice") …
>
> [Marion] county schedules and holds its own tax sale. Some counties' auction sales are held via the internet, others are in person auctions. The rules of the sale are set forth in Indiana Code § 6-1.1-24 *et.al.* It is the bidder's responsibility to make certain they meet the requirements of the rules of the sale.
>
> …
>
> Upon a successful bid at a valid tax sale, the tax sale purchaser [S&C] will receive a tax sale certificate signed by the [Marion] county auditor and certified by the

---

[2]   A short legal description of the Property is attached hereto.

[3]   As reflected in the Minute Entry/Order (Docket No. 17), at a status conference on August 12, 2024, S&C represented to the Court that the Property is and has been titled of record in S&C's name from and since the Tax Deed (as defined below) was issued on July 19, 2022 and later recorded. S&C has further represented that S&C has not made any subsequent transfer of any interest in the Property.

[4]   This summary (with a few bracketed interlineations) comes from materials prepared by Scott Richards for the "17th Annual Indiana Tax Sale Seminar" presented by the William R. Richards, P.C. law firm on August 21, 2015. The tax sale at issue here took place in October 2015. The Court knows of no later material change to the tax sale statute that would change this summary or affect the Court's decision.

> [Marion] county treasurer which contains the name of the owner of record at the time of the sale or the name of at least one of the owners of the property with multiple owners, mailing address of the owner of record as indicated in the auditors records, the name of the purchaser, the date of the sale, the amount for which the real property was sold, the amount of the minimum bid for which the property was offered at the time of sale, the date when the period of redemption expires, the court cause number under which the judgment was obtained, the short legal property description, the parcel number, the street address, if any, or common description of the property and the date after which the purchaser is first entitled to request a deed to the property which is the last day to redeem. <u>By virtue of obtaining this certificate, the tax sale purchaser acquires a lien against the property purchased for the entire amount paid. The tax sale certificate is assignable.</u>
>
> In Indiana, any person may redeem the property sold at tax sale at any time prior to expiration of the period of redemption. <u>Actual title to the property cannot be obtained until after this one (1) year redemption period has expired, accrued taxes are paid and the tax certificate is tendered in exchange for a tax deed.</u>
>
> A redeeming party must pay the minimum bid plus the interest incurred through the date of redemption as established and set forth in Indiana Code § 6-1.1-25 *et.al.* … . Per IC 6-1.1-25-2(f), [t]he total amount required for redemption includes all taxes, special assessments, interest, penalties, and fees on the property that accrued after the sale. In addition the tax sale purchaser may recover from the redeeming party all taxes and special assessments paid by the purchaser subsequent to the sale, interest is paid on these sums. …
>
> …
>
> If the property is not redeemed, after the expiration of the redemption period but not later than three (3) months after the expiration of the period of redemption the purchaser [S&C] … may file a petition verifying that all statutorily required procedures have been followed and requesting the issuance of a tax deed. This Petition is filed in the same court and under the same cause number as was the original Petition for Tax Sale (the pre-sale petition) discussed above. Notice requirements with respect to the petition are set forth in Indiana Code § 6-1.1-25-4.6. (the "4.6 notice")
>
> The executed tax deed vests in the grantee an estate in fee simple absolute. The fee is free and clear of all liens and encumbrances *except* easements, covenants and state and federal liens for taxes and special assessments which may remain as encumbrances. <u>However, until the Tax Sale Purchaser receives the Tax Deed, vesting ownership in the purchaser, they do not own the property.</u> …

(Emphasis added.)

    The tax sale process is a means to collect property tax through the sale and assignment of

a county's lien position and the potential foreclosure of that lien position, should the owner fail to timely redeem the property. In essence, as the first step in that tax sale process, the purchaser at a tax sale (here, S&C) receives a tax sale certificate, not a deed, to the "sold" property. At that point, the purchaser (here, S&C) holds only a lien against the property. In a second major step, that certificate holder (here, S&C) may foreclose its lien and obtain a deed to the property if the tax obligor or someone with a cognizable interest in the property (like a mortgage holder) does not, during a one-year redemption period, redeem the property from the certificate holder's lien by paying the amount paid by the certificate holder plus a statutory upcharge.

This adversary proceeding arises because between tax sale steps one and two described above, the Property owner, Joseph Dewayne Satterfield ("Debtor"), commenced a bankruptcy case. On October 7, 2016, Debtor filed a voluntary petition commencing a chapter 13 case under case under 16-07793-JJG-13 (the "Prior Case"). The Prior Case was commenced at least two days before expiration of the redemption period under the Indiana tax sale statute. As a result, we must assess the nature of S&C's claim against Debtor and interest in the Property in the Prior Case and the effect on that claim and interest of the confirmation and consummation of Debtor's chapter 13 plan.

Upon the filing of the Prior Case, S&C held a claim, secured by a lien against the Property, in the amount required to redeem the Property based on S&C's purchase of the tax sale certificate. *In re LaMont*, 740 F.3d 397 (7th Cir. 2014).

On June 20, 2017, S&C filed a proof of claim (the "POC") in the Prior Case. S&C asserted a secured claim in the amount of $6,413 secured by a lien arising from the tax sale of Debtor's Property. S&C was obligated to file a proof of claim if it wished to participate in the Prior Case. *In re Pajian*, 785 F.3d 1161 (7th Cir. 2015).

On July 21, 2017, Debtor filed his proposed *Chapter 13 Plan, Amended Plan #2* (the

"Plan") (Prior Case Docket No. 42). Paragraph 6 of the Plan provided for the full payment of S&C's secured claim with interest at 8% *per annum*, as requested by S&C in its POC. On August 28, 2017, the Court confirmed the Plan (Prior Case Docket No. 46). Thereafter, Debtor fully consummated the Plan as it pertained to S&C.[5] Debtor, through the chapter 13 trustee, paid S&C a total of $7,100.39 in installments that fully amortized and satisfied S&C's secured claim. (Ex. B to Complaint.)

> Paragraph 12 of the Plan provides:
>
> With respect to each allowed secured claim provided for by the plan, the holder of such claim shall retain its lien securing such claim until the earlier of a) the payment of the underlying debt determined under non-bankruptcy law or b) a discharge order being entered under 11 U.S.C. § 1328.
>
> Bankruptcy Code § 1327 sets forth the effects of confirmation of a chapter 13 plan as

follows:

> (a) The <u>provisions of a confirmed plan bind the debtor and each creditor</u>, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan.
> (b) Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor.
> (c) Except as otherwise provided in the plan or in the order confirming the plan, the property vesting in the debtor under subsection (b) of this section is free and clear of any claim or interest of any creditor provided for by the plan.

(Emphasis added.) Therefore, upon full payment of S&C's secured claim, the Property revested in Debtor as provided in the Plan free and clear of any lien that S&C held as of the petition date of the Prior Case based upon S&C's purchase of the tax sale certificate. Pursuant to the Plan, S&C's secured claim was satisfied and the lien discharged upon completion of the payments on S&C's secured claim. Confirmation and consummation of the Plan binds S&C and prevents S&C from acquiring title to the Property based upon a lien that was satisfied and released per the

---

[5] Debtor did not receive a discharge in the Prior Case because Debtor owed an arrearage on a domestic support obligation at the end of the Prior Case.

Plan. S&C's request to the state court to issue a deed and S&C's acceptance and recording of such deed in consideration of the lien that had been satisfied were prohibited by the binding effect of the confirmed and consummated Plan.

S&C argues in opposition to the Motion that "S&C notified the Marion County Treasurer that it had received certain payments through the Trustee conduit during the Debtor's Chapter 13 bankruptcy proceeding, but the Treasurer advised [S&C] that those payments were insufficient to accomplish a redemption of the Subject Property." (Response, ¶ 17.) Notwithstanding full payment of its secured claim in the Prior Case, S&C applied for and caused a tax deed to the Property (the "Tax Deed") to be issued to it on July 19, 2022 in exchange for the tax sale certificate. S&C later recorded the Tax Deed with the Marion County Recorder, making S&C the record title holder to the Property.

*Reasoning*

As a result of the Hearing, it has become clearer to the Court that S&C asserts that it was entitled to take ownership of the Property because Debtor did not redeem the Property in strict accordance with Indiana's tax sale statute and within redemption time limits created by that Indiana statute. (Response, ¶ 16.) In particular, S&C says that after the initial tax sale in October 2015, one or more subsequent installments of property tax were assessed against the Property and became due and payable. S&C asserts that it paid one or more such installment(s) (the "Later Installments"). S&C represented to the Marion County Treasurer (and the state court with jurisdiction over the 2015 tax sale) that Debtor had not redeemed the Property, in accordance with the tax sale statute, from the initial tax sale in 2015. S&C obtained an order from the state court ordering the Treasurer to issue the Tax Deed to S&C. (Response, ¶¶ 19-20). At the Hearing, S&C's counsel made it clear that S&C's taking and recording of the Tax Deed was to foreclose the lien acquired at the initial tax sale.

However, under the Supremacy Clause of the United States Constitution,[6] Federal Bankruptcy law overrides conflicting state law within the areas of Federal jurisdiction. Here, Federal Bankruptcy law extinguished S&C's lien on the Property acquired by the tax sale upon consummation of the confirmed Plan. There was no lien held by S&C that could have formed a basis for the foreclosure issuance of the Tax Deed. S&C's purported title and ownership of the Property are invalid. The actions taken by S&C in violation of the Plan did not produce an effective transfer of the Property from Debtor to S&C.

In *LaMont*, the Seventh Circuit Court of Appeals rejected the very argument asserted by S&C – that a state's tax sale law can override the satisfaction of a secured claim in bankruptcy. Because of the Supremacy Clause, it is just the opposite; Federal law prevails.

The Seventh Circuit in *LaMont* explained:

> [The tax sale purchaser's] assertion that the full redemption amount must be paid in a lump sum before the redemption deadline – i.e., that a proper redemption must be made – is mistaken. The plan is treating his secured claim, *not* formally redeeming the property. The bankruptcy code provides that a Chapter 13 plan may modify a secured claim and pay it over the course of the plan. How a Chapter 13 plan operates in the tax sale context has been correctly explained by *In re Bates*, 270 B.R. at 465-66. Here, because the plan succeeded, [the tax sale purchaser's] claim was satisfied – he no longer has any right to exercise the equitable remedy of obtaining a tax deed. The expiration of the redemption period did not affect the plan's treatment of [the tax sale purchaser's] secured claim except that, if the debtors had failed to comply with the plan, then his equitable remedy would have survived and he could have sought an order to issue a deed. *Id.* at 468-69. Accordingly, the expiration of the redemption period does not affect the validity of the plan or necessitate a modification of the automatic stay so long as the debtors comply with the plan.

*Lamont*, 740 F.3d at 409-10 (footnotes omitted; emphasis in original).

The Tax Deed was not effective to transfer ownership of the Property to S&C. The purported conveyance is of no force and effect because there was no lien held by S&C at the time the Tax Deed was issued and therefore no lien to foreclose as the basis for S&C's request

---

[6]    U.S. Const., Art. VI, Cl. 2.

for a Tax Deed. The action taken in clear violation of the terms of the confirmed Plan was ineffective to transfer ownership. *See* § 1327(a), *LaMont*, 740 F.3d at 402 ("[c]reditors of the debtors are bound by the provisions of a confirmed plan"); *In re Sullivan*, 321 B.R. 306, 308 (Bankr. M.D. Fla. 2005) ("[t]he binding effect of confirmation of a Chapter 13 plan is a basic tenet of bankruptcy law").

Moreover, even if there was an effective transfer of ownership to S&C, the issuance of the Tax Deed is avoidable and hereby avoided pursuant to §§ 548 and 544 and the Indiana Uniform Avoidable Transfer Act, Ind. Code. § 32-18-2-1 *et seq*. No obligation to S&C or lien arising from the tax sale existed to serve as consideration to support the transfer of the Property to S&C by the Tax Deed. At the Hearing, counsel for S&C represented that the only legal basis for S&C's claim to title is the 2015 tax sale and the tax sale certificate issued at that sale. Trustee is cloaked with the strong arm powers of § 544, including the power of a *bona fide* purchaser ("BFP") from Debtor of the Property. Such a BFP could avoid the purported but ineffective transfer to S&C of title. The continued recordation of the Tax Deed "clouds" the title that Trustee is deemed to hold as a BFP of the Property. Trustee is entitled to remove that cloud.

Because there was no lien or secured claim to serve as consideration for issuance of the Tax Deed, the purported transfer was made for no valid consideration. Trustee has established that the estate received less than reasonably equivalent value in exchange for the Property and all other elements necessary for avoidance of the transfer under § 548 and Ind. Code § 32-18-2-15.

<u>Remedies</u>

It is the Court's intention by this Entry to restore and vest good and marketable record title to the Property in Debtor.[7] To the extent the record reflects that S&C holds title to the

---

[7] By operation of law, specifically § 541(a), the Property becomes property of the bankruptcy estate that arose upon the filing of the underlying bankruptcy case. References herein to restoring marketable record title in

Property, the Court intends to divest and hereby divests S&C's title.

S&C is ordered to promptly execute and record with the Office of the Recorder of Marion County an instrument to strike the Tax Deed from the record such that it will become clear from the records of the Recorder's Office that title to the Property is vested, quieted and remains in Debtor.  In addition, S&C shall, promptly upon request, execute and record any other release, deed or instrument reasonably required to clarify and establish in the record that Debtor has and has had continuing and uninterrupted ownership of the Property.  This Entry and the accompanying judgment may be recorded in the Office of the Recorder of Marion County.

If, within 30 days, the Tax Deed is not stricken of record or S&C has not executed and recorded all other releases, deeds or instruments reasonably required to clarify and establish in the record that Debtor has and has had continuing and uninterrupted ownership of the Property in accordance with the foregoing paragraph, then pursuant to Fed. R. Civ. P. 70(a) and (b), made applicable to this adversary proceeding by Fed. R. Bankr. P. 7070, the Court may take further action to fully effect the vesting in Debtor and divesting in S&C of record title to the Property. Debtor may record this Entry and the accompanying judgment in the Office of the Recorder of Marion County, which has the effect of a legally executed conveyance.

The clarification, restoration and vesting of marketable record title to the Property in Debtor, effected hereby, is without prejudice to such rights as may exist for S&C to assert a claim in this case with respect to the Later Installments.  Notwithstanding the prior passage of the bar date set in the underlying bankruptcy case, S&C may file a proof of claim to assert a claim based upon the Later Installments within 30 days after the date of this Entry.

*Conclusion*

---

Debtor therefore mean that such Property has been and will be recognized again as property of the estate in the underlying bankruptcy case.

For the reasons set for the above, the Motion is GRANTED. The Court will enter a separate summary judgment in favor of Trustee and against Defendant contemporaneously herewith. Moreover, the Court may issue such additional orders as may be required to effect the results intended hereby.

IT IS SO ORDERED.

# # #

Legal Description for 624 Congress Avenue, Indianapolis, Marion County, Indiana (as reflected on the Property Record Card accessible on the Marion County Assessor's website):

Jose Balz North West L20